UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

ANTWANE CARLISLE,

                              Plaintiff,

            v.                                                      9:03-CV-0296
                                                                    (FJS/GHL)

GLENN GOORD, Commissioner; THERESA
A. KNAPP-DAVID, Dir. Classification/Movement;
A. TOUSIGNANT, Nurse Administrator;
J. BOUYEA, Correction Officer; L. LECLAIRE,
Dep. Comm.,

                              Defendants.

_____

APPEARANCES:                                              OF COUNSEL:

ANTWANE CARLISLE, *Pro Se*
98-A-5948
Auburn Correctional Facility
135 State Street
P.O. Box 618
Auburn, New York 13024-9000

HON. ELIOT L. SPITZER                               PATRICK F. MACRAE, ESQ.
Attorney General for the State of New York          Assistant Attorney General
      Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

_____This matter has been referred to me for Report and Recommendation by the Honorable

Frederick J. Scullin, Senior United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Local Rule N.D.N.Y. 72.3(c).  This is a *pro se* civil rights action brought under 42 U.S.C. § 1983

by Inmate Antwane Carlisle ("Plaintiff") against five employees of the New York State

Department of Correctional Services ("DOCS")--DOCS Commissioner Glenn Goord, DOCS Deputy Commissioner L. LeClaire, DOCS Director of Classification/Movement Theresa A. Knapp-David, Upstate Correctional Facility Nurse Administrator A. Tousignant, and Upstate Correctional Facility Correction Officer J. Bouyea ("Defendants").  Generally, Plaintiff alleges that Defendants violated his rights under the First, Fourth, Fifth, Eighth and Fourteenth Amendments by being deliberately indifferent to his serious medical needs and by depriving him of various rights (including the right to due process), between September of 2002 and May of 2003, while he was incarcerated at Attica Correctional Facility ("Attica C.F.") and Upstate Correctional Facility ("Upstate C.F.").  (Dkt. No. 1.)  Currently before the Court is Defendants' motion for summary judgment (Dkt. No. 67), which Plaintiff has opposed (Dkt. No. 72).  For the reasons discussed below, I recommend that Defendants' motion for summary judgment be granted.

I.      BACKGROUND

Plaintiff's Verified Complaint asserts **three** causes of action:

**(1)** That Defendants **Goord**, **LeClaire** and **Knapp-David** violated Plaintiff's **Fifth** and/or **Fourteenth Amendment** rights to **due process** when they (a) knowingly or recklessly permitted him to be transferred to Upstate C.F. on November 6, 2002, following the imposition of his disciplinary hearing sentence at Attica C.F. on September 12, 2002 of 120 days in *keeplock confinement* (not confinement in a Special Housing Unit or "SHU") and then (b) knowingly or recklessly enforced an unlawful "SHU conversion policy," which subjected Plaintiff to *SHU confinement* at Upstate C.F., under conditions that were more restrictive than the conditions of keeplock confinement to which he was sentenced at his disciplinary hearing, thus impermissibly

2

enhancing his sentence;

**(2)** That Defendant **Tousignant** violated Plaintiff's **Eighth Amendment** right to be free of cruel and unusual punishment when she was **deliberately indifferent to Plaintiff's serious medical need** (consisting of an asthma condition) through her failure to respond to his complaints about her medical staff's refusal to return his confiscated asthma pump and/or manage his asthma condition, during the unlawful SHU confinement that he was forced to serve at Upstate C.F.; and

**(3)** That Defendant **Bouyea** violated Plaintiff's **First**, **Fourth, Fifth** and/or **Fourteenth Amendment** rights by **unlawfully searching his cell** without reasonable suspicion of the existence of contraband and **unlawfully confiscating fifty pages of his legal papers** (which deprived him of his **right to redress various violations**), and then issuing him a **false misbehavior report** (which resulted in a disciplinary conviction and sentence of an additional ninety days confinement in the SHU at Upstate C.F.). (Dkt. No. 1, ¶¶ 6, 7.)

Generally, Defendants' motion for summary judgment (and Plaintiff's opposition thereto) raise the following **four** issues:

**(1)** Whether Plaintiff's **first cause of action** (alleging that Defendants Goord, LeClaire and Knapp-David denied Plaintiff due process during the conversion of his disciplinary sentence from one of keeplock confinement to one of SHU confinement) should be dismissed because Plaintiff was not deprived of due process and/or Defendants Goord, LeClaire and Knapp-David are protected by qualified immunity;

**(2)** Whether Plaintiff's **second cause of action** (alleging that Defendant Tousignant was deliberately indifferent to Plaintiff's serious medical needs) should be dismissed because Plaintiff

has not shown that his medical need was sufficiently serious, nor has he shown that Defendant

Tousignant acted with deliberate indifference, nor has he shown that Defendant Tousigant (a

supervisor) was personally involved in the alleged constitutional deprivation;

**(3)** Whether Plaintiff's **third cause of action** (alleging that Defendant Bouyea violated

various of Plaintiff's constitutional rights by unlawfully searching his cell, seizing his legal

papers, and issuing him a misbehavior report) should be dismissed because Plaintiff has not

shown that he successfully challenged the charges contained in the misbehavior report at issue,

Plaintiff has no constitutional right to not receive a false misbehavior report, Plaintiff has not

shown that he suffered any deprivation of liberty as the result of the misbehavior report filed by

Defendant Bouyea, and Plaintiff's claim that he was deprived of his right to redress various

violations lacks sufficient factual specificity; and

**(4)** Whether Plaintiff has shown cause, under **Fed. R. Civ. P. 56(f)**, for a stay of

consideration of Defendants' motion for summary judgment pending completion of further

discovery to enable Plaintiff to oppose Defendants' motion.  (Dkt. No. 67, Part 5 [Defs.' Mem. of

Law]; Dkt. No. 72, Part 2 [Plf.'s Mem. of Law].)

## II.    SUMMARY JUDGMENT STANDARD

Under Fed. R. Civ. P. 56(c), summary judgment is warranted if "the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a

genuine issue of material[1] fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[2]

      However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).[3]  The nonmoving party must do more than "simply show that there is some metaphysical doubt as to the material facts."[4] "A dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[5]

      Imposed over this general burden-shifting framework is the generous perspective with which the Court generally views a *pro se* plaintiff's pleadings and papers, and a civil rights plaintiff's pleadings and papers.[6]  For example, where a civil rights plaintiff is proceeding *pro se*,

---

    [1]    A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248 (1986).

    [2]    *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

    [3]    *See also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

    [4]    *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 477 U.S. 574, 585-86 (1986); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

    [5]    *Ross v. McGinnis*, 00 Civ. 0275, 2004 WL 1125177, *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

    [6]    *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam* ) (*pro se* civil rights action); *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989) (*pro se* civil rights action); *Aziz Zarif Shabazz v. Pico*, 994 F.Supp. 460,  467 (S.D.N.Y. 1998) (*pro se* civil rights action), *aff'd in part*, *vacated in part on other grounds*, 205 F.3d 1324 (2d Cir. 2000) (unpublished decision).

and the defendant has filed a dispositive motion, generally the Court must construe the plaintiff's

complaint and opposition papers liberally so as to raise the strongest arguments that they

suggest.[7]

Having said that, "[p]roceeding pro se does not otherwise relieve a [party] from the usual

requirements to survive a motion for summary judgment."[8]  Moreover, "there are circumstances

where an overly litigious inmate, who is quite familiar with the legal system and with pleading

requirements, may not be afforded such special solicitude."[9]  I note that, in such cases, the overly

---

[7]     *See Weixel v. Bd. of Ed. of City of New York,* 287 F.3d 138, 146 (2d Cir. 2002) (motion to dismiss in civil rights case); *Burgos v. Hopkins,* 14 F.3d 787, 790 (2d Cir. 1994) (motion for summary judgment in civil rights case); *Thomas v. Irving,* 981 F. Supp. 794, 799 (W.D.N.Y. 1997) (motion for summary judgment in civil rights case).

[8]     *Bussa v. Aitalia Line Aeree Italiane S.p.A.*, 02-CV-10296, 2004 WL 1637014, at *4 (S.D.N.Y. July 21, 2004) [citations omitted], *accord, Durran v. Selsky*, 251 F. Supp.2d 1208, 1211 (W.D.N.Y. 2003) [citations omitted].  For example, although "[t]he work product of *pro se* litigants should be generously and liberally construed, . . . [a *pro se* litigant's] failure to allege either specific facts or particular laws that have been violated renders [an] attempt to oppose defendants' motion ineffectual."  *Kadosh v. TRW, Inc.*, No. 91 Civ. 5080, 1994 WL 681763, at *5 (S.D.N.Y. Dec. 5, 1994).

[9]     *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742738, at *3 & n.2 (N.D.N.Y. June 22, 2006) (McAvoy, J; Lowe, M.J.) (plaintiff had filed at least 20 actions in Northern District of New York and five other actions in Southern District of New York); *Davidson v. Talbot*, 01-CV-0473, 2005 U.S. Dist. LEXIS 39576, at *19 & n.10 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in the Northern District of New York alone); *Gill v. Riddick*, 03-CV-1456, 2005 U.S. Dist. LEXIS 5394, at *7 & n.3 (N.D.N.Y. March 31, 2005) (Treece, M.J.) (plaintiff had filed 20 actions in Northern District alone of New York); s*ee also Johnson v. Eggersdorf*, 8 Fed. Appx. 140, 143 (2d Cir. May 17, 2001) (unpublished opinion) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-0938, Decision and Order (N.D.N.Y. May 28, 1999) (Kahn, J.), *adopting*, 97-CV-0938, Report-Recommendation, at 1, n.1 (N.D.N.Y. Apr. 28, 1999) (Smith, M.J.); *Johnson v. C. Gummerson*, 201 F.3d 431 (2d Cir. 1999) (plaintiff at one point had 12 simultaneously pending lawsuits in Northern District alone), *aff'g*, 97-CV-1727, Decision and Order (N.D.N.Y. June 11, 1999) (McAvoy, J.), *adopting*, 97-CV-1727, Report-Recommendation (N.D.N.Y. April 28, 1999) (Smith, M.J.); *Davidson v. Flynn*, 32 F.3d 27, 31 (2d Cir. 1994) (plaintiff at one time had at least 30 simultaneously pending lawsuits); *Davidson v. Dean*, 204 F.R.D. 251, 257 (S.D.N.Y. 2001)

litigious inmate is not being denied this special solicitude or status as a form of punishment for

his litigiousness but as a form of recognition of his obvious litigation experience (and the lack of

need for special solicitude).[10]

Here, after carefully considering the matter,[11] I conclude that Plaintiff's litigation

experience warrants denying him the special solicitude or status normally afforded *pro se* civil

rights litigants.  In addition to the current action, Plaintiff has previously filed at least 13 actions

or appeals.[12]  Furthermore, these actions or appeals have not been altogether unsuccessful.[13]

---

(plaintiff at one point had 30 simultaneous pending suits); *Santiago v. C.O. Campisi*, 91 F. Supp.2d 665, 670 (S.D.N.Y. 2000) (plaintiff had 10 suits pending in district); *McGann v. U.S.*, 98-CV-2192, 1999 WL 173596, at *2, 8-10 (S.D.N.Y. March 29, 1999) (court found 79 reported decisions of cases that plaintiff had filed during previous 43 years); *Brown v. McClellan*, 93-CV-0901, 1996 U.S. Dist. LEXIS 8164, at *3-4, & n.3, 1996 WL 328209 (W.D.N.Y. 1996) (plaintiff had filed seven previous lawsuits against prison officials); *Brown v. Selsky*, 93-CV-0268, 1995 U.S. Dist. LEXIS 213, at *2, n.1, 1995 WL 13263 (W.D.N.Y. Jan. 10, 1995) (plaintiff had seven cases pending in district).

[10]     *See*, *supra*, note 9 (citing cases discussing rationale for denying special status to overly litigious *pro se* litigants).

[11]     I acknowledge that, more than two years ago, I decided to afford Plaintiff the sort of special solicitude generally due to *pro se* litigants; however, I made that decision based on only a *brief* review of the case and out of an abundance of caution.  (Dkt. No. 33 at 6 [Order filed 4/15/04].)

[12]     Specifically, he has filed the following six actions: (1) No. 02-CV-6662 in Western District; (2) No. 01-CV-11392 in Southern District; (3) 99-CV-6643 in Southern District; (4) No. 94-CV-2945 in Southern District; (5) No. 90-CV-0406 in Southern District; and (6) No. 90-CV-0093 in Southern District.  In addition, he has filed the following seven appeals, among others: (1) No. 03-6253 in United States Supreme Court; (2) No. 96-2356 in Second Circuit; (3) No. 1054 in New York State Court of Appeals; (4) No. 822 in New York State Court of Appeals; (5) No. 03-01904 in Fourth Department; (6) No. 00-02560 in Fourth Department; and (7) No. 98-09428 in Second Department.

[13]     *See, e.g.*, *Carlisle v. City of Yonkers*, 96-2356, 1996 U.S. Dist. LEXIS 30973 (2d Cir. Nov. 29, 1996) (vacating and remanding in part district court's grant of summary judgment to defendants in plaintiff's civil rights action).

Finally, with regard to the current action, I note that the motion papers that Plaintiff has submitted over the past several years have generally been fairly good–being typed, being accompanied by affidavits, containing legal and record citations, etc.[14]

## III.    STATEMENT OF MATERIAL FACTS

Generally, the facts set forth in a movant's Rule 7.1(a)(3) Statement of Material Facts will be taken as true to the extent those facts are supported by the evidence in the record[15] and are not specifically controverted by the non-movant.[16]  Thus, where the non-movant fails to respond to the movant's Rule 7.1 Statement of Material Facts, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[17]

_____

[14]       (*See, e.g.*, Dkt. No. 25 [Plf.'s Motion for Default Judgment], Dkt. Nos. 47-48, 51, 55, 59 [Plf.'s Motion to Compel, Affidavits and Replies], Dkt. No. 61 [Plf.'s *Ex Parte* Application for Expert Services], Dkt. No. 62 [Plf.'s Notice of Appeal re: Order on Motion to Compel]; Dkt. No. 72, Part 2 [Plf.'s Response Mem. of Law].)

[15]       *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243-245 (2d Cir. 2004) ("If the evidence submitted in support of the motion for summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden . . . , the district court may not rely solely on the statement of undisputed material facts contained in the moving party's Rule 56.1 statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [citation omitted]; *see, e.g., Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added].

[16]       *See* Local Rule 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.").

[17]       *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") (citations omitted); *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-

Here, Plaintiff has not responded to Defendants' Rule 7.1 Statement.  (Dkt. No. 67, Part 3.)  The closest he comes to responding to Defendants' Rule 7.1 Statement is through his submission of a document entitled "Affidavit in Opposition."  (Dkt. No. 72, Part 1.)  The trouble is that this document does not "mirror the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs," as required by Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court.[18]  (*Compare* Dkt. No. 67, Part 3 *with* Dkt. No. 72, Part 1.)  Nor does the document "set forth a specific citation to the record where the factual issue arises," as also required by Local Rule 7.1(a)(3).  (*See, e.g.*, Dkt. No. 72, Part 1, ¶¶ 12, 17, 19, 20, 23-25 [containing no record citations].  In addition, the document contains impermissible legal argument in violation of Local Rule 7.1(a)(3), which provides that the Rule 7.1 Response shall contain facts only.[19]  (*See, e.g.*, Dkt. No. 72, Part 1, ¶¶ 23-25.)

I find that these deficiencies in Plaintiff's response papers are inexcusable considering (1) his significant litigation experience, which includes experience responding to motions for

---

13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[18]     Specifically, the document does not "affirm" or "deny" any of Defendants' factual assertions; nor do the document's paragraphs match Defendants' paragraphs.

[19]     *See also* N.D.N.Y. L.R. 7.1(a)(2) ("An affidavit must not contain legal arguments . . . .").

summary judgment,[20] (2) the fact that previously I specifically informed Plaintiff that he needed

to file a Rule 7.1 Response, and that if he failed to do so I would "be heavily influenced by

Defendants' versions of the facts" and "all material facts set forth in [Defendants' Rule 7.1

Statement [would] be deemed admitted";[21] and (3) the fact that Defendants similarly notified

Plaintiff of the consequences of his failure to properly contradict the facts asserted by

Defendants' in their motion.[22]

      Under the circumstances, I decline to perform an independent review of the record to find

proof of a factual dispute–although I will take notice of such a factual dispute if I discover such

proof during my necessary review of the record (e.g., my review of the record to confirm that

Defendants' factual assertions in their Rule 7.1 Statement are supported by the record).  To the

extent that I discover any proof of factual disputes during my necessary review of the record, I

will, of course, treat Plaintiff's Verified Complaint (Dkt. No. 1 at 6) as an "affidavit."[23]

      However, I note that, to be sufficient to create a factual issue, an affidavit (or verified

---

[20]    *See*, *e.g.*, *Carlisle v. City of Yonkers*, 96-2356, 1996 U.S. Dist. LEXIS 30973 (2d Cir. Nov. 29, 1996) (vacating and remanding in part district court's grant of summary judgment to defendants in plaintiff's civil rights action).

[21]    (Dkt. No. 69 at 2 & n.2-3 [Order filed 3/9/06].)

[22]    (Dkt. No. 67, Part 4 [Defs.' Rule 56.2 Notice filed 6/20/05].)

[23]    *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted]; Fed. R. Civ. P. 56(c) ("The judgment sought shall be rendered forthwith if the . . . affidavits . . . show that there is no genuine issue as to any material fact . . . .").

complaint) must, among other things, be based "on personal knowledge."[24]  An affidavit (or

verified complaint) is not based on personal knowledge if, for example, it is based on mere

"information and belief" or hearsay.[25]  In addition, such an affidavit (or verified complaint) must

not be conclusory.[26]  An affidavit (or verified complaint) is conclusory if, for example, its

assertions lack any supporting evidence or are too general.[27]  Moreover, "[a]n affidavit must not

---

[24]     Fed. R. Civ. P. 56(e) ("Supporting and opposing affidavits shall be made on
personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show
affirmatively that the affiant is competent to the matters stated therein."); *see also U.S. v. Private
Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.*, 44 F.3d 1082, 1084 (2d Cir. 1995) [citations
omitted], *cert. denied sub nom*, *Ferrante v. U.S.*, 516 U.S. 806 (1995).

[25]     *See Patterson*, 375 F.3d at 219 ("[Rule 56(e)'s] requirement that affidavits be
made on personal knowledge is not satisfied by assertions made 'on information and belief.'. . .
[Furthermore, the Rule's] requirement that the affiant have personal knowledge and be
competent to testify to the matters asserted in the affidavits also means that the affidavit's
hearsay assertion that would not be admissible at trial if testified to by the affiant is insufficient
to create a genuine issue for trial."); *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d
Cir. 1988) ("[Defendant's] affidavit states that it is based on personal knowledge *or* upon
information and belief . . . .  Because there is no way to ascertain which portions of [Defendant's]
affidavit were based on personal knowledge, as opposed to information and belief, the affidavit is
insufficient under Rule 56 to support the motion for summary judgment."); *Applegate v. Top
Assoc., Inc.*, 425 F.2d 92, 97 (2d Cir. 1970) (rejecting affidavit made on "suspicion . . . rumor
and hearsay"); *Spence v. Maryland Cas. Co.*, 803 F. Supp. 649, 664 (W.D.N.Y. 1992) (rejecting
affidavit made on "secondhand information and hearsay"), *aff'd*, 995 F. 2d 1147 (2d Cir. 1993).

[26]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts
showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor
is a genuine issue created merely by the presentation of assertions [in an affidavit] that are
conclusory.") [citations omitted]; *Applegate*, 425 F.2d at 97 (stating that the purpose of Rule
56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from
degenerating into mere elaboration of conclusory pleadings").

[27]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy,
C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition
testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are
insufficient to defeat a properly supported motion for summary judgment.") [citations omitted];
*West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting
affidavit's conclusory statements that, in essence, asserted merely that there was a dispute

present legal arguments."[28]

Finally, even where an affidavit (or verified complaint) is based on personal knowledge and is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint."[29]

_____

between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . . It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[28]     N.D.N.Y. L.R. 7.1(a)(2).

[29]     *See, e.g., Jeffreys v. City of New York*, 426 F.3d 549, 554-555 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 Fed. Appx. 383 (2d Cir. 2005) (unreported decision).

## IV.     ANALYSIS

### A.     Whether Plaintiff's First Cause of Action (Alleging that Defendants Goord, LeClaire and Knapp-David Denied Plaintiff Due Process During the Conversion of His Disciplinary Sentence from Keeplock Confinement to SHU Confinement) Should Be Dismissed

Generally, I agree with the arguments made by Defendants in their memorandum of law (Dkt. No. 67, Part 5 at 5-13 [Defs.' Mem. of Law]), and I reject the arguments made by Plaintiff in his memorandum of law (Dkt. No. 72, Part 2 at 7-17 [Plf.'s Mem. of Law]).

As a threshold matter, I note that a prisoner has no due process right to not be transferred to another prison.[30]  Granted, a prisoner has a First Amendment right to not be transferred in retaliation for exercising a constitutional right; however, here, Plaintiff has neither adduced, nor even alleged, any facts that would support such a claim.[31]  The question, rather, has to do with whether there was a violation of due process through the enhancement or "conversion" of

---

[30]     *Meachum v. Fano*, 427 U.S. 215, 224-225 (1976) ("The initial inquiry is whether the transfer of respondents from Norfolk [Correctional Institution] to Walpole [Correctional Institution] and Bridgewater [Correctional Institution] infringed or implicated a 'liberty' interest of respondents within the meaning of the Due Process Clause.  Contrary to the Court of Appeals, we hold that it did not."), *accord, Montayne v. Haymes*, 427 U.S. 236, 241-242 & n.4 (1976) (reversing Second Circuit decision cited by Plaintiff on page 12 of his memorandum of law); *Meriwether v. Coughlin*, 879 F.2d 1037, 1047 (2d Cir.1989) ("It is well established that the transfer of a prisoner from one institution to another does not invoke the protection of the Due Process Clause."), *accord, Burke v. McCoy*, 96-CV-0984, 1997 WL 610650, at *5 (N.D.N.Y. Oct. 1, 1997) (Pooler, J.); *Kalwasinski v. Morse*, 96-CV-6475, 2005 WL 318817, at *1 (W.D.N.Y. Feb. 9, 2005); *Dunley v. Rodwell*, 01-CV-2007, 2004 WL 2106595, at *5 (D. Conn. Sept. 17, 2004); *Majid v. Malone*, 95-CV-2545, 1996 WL 134756, at *4 (S.D.N.Y. March 26, 1996); *see also Murphy v. Bradley*, 03-CV-714, 2004 U.S. Dist. LEXIS 1074, at *6-7 (D. Conn. Jan. 16, 2004) ("A prisoner has no constitutional right to be incarcerated in a particular institution; he may be transferred for any reason or for no reason at all"–even where conditions in one prison are "more disagreeable" or the prison has "more severe rules.").

[31]     *Majid v. Malone*, 95-CV-2545, 1996 WL 134756, at *4 (S.D.N.Y. March 26, 1996) (reaching same conclusion); *see also, infra*, Part IV.C.4. (discussing elements of First Amendment retaliation claim).

Plaintiff's disciplinary sentence from one of keeplock confinement to one of SHU confinement.

The Due Process Clause contains both a substantive component and a procedural component.[32]  The substantive component "bars certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them."[33]  The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . . *without due process of law*."[34]  One of the differences between the two claims is that a substantive due process violation "is complete when the wrongful action is taken," while a procedural due process violation "is not complete unless and until the State fails to provide due process" (which may occur *after* the wrongful action in question).[35]

Here, because it is unclear under which theory Plaintiff is asserting his due process claim (as Defendants correctly observe, *see* Dkt. No. 67, Part 5 at 9), and because Plaintiff argues that he is alleging his due process claim under both theories (*see* Dkt. No. 72, Part 2, Plf.'s Mem. of Law at 9), I will analyze Plaintiff's due process claim under both theories in the interest of thoroughness.

### 1.    Substantive Due Process Claim

"Substantive due process protects individuals against government action that is arbitrary, . . . conscience-shocking, . . . or oppressive in a constitutional sense, . . . but not against

---

[32]      *Zinernon v. Burch*, 494 U.S. 113, 125 (1990).

[33]      *Zinernon*, 494 U.S. at 125 [internal quotations marks and citation omitted].

[34]      *Id*. at 125-126 [internal quotations marks and citations omitted; emphasis in original].

[35]      *Id*.

14

constitutional action that is incorrect or ill-advised."[36]

The first step in a substantive due process analysis is to identify the precise constitutional right at stake.  The second step is to consider whether the state action was arbitrary in the constitutional sense and therefore violative of substantive due process.

Here, Plaintiff is alleging that, once he was sentenced (on September 10 and 12, 2002, at Attica C.F.) to serve 180 days of keeplock confinement as a result of two disciplinary convictions, he had a constitutional right to (even if transferred to another correctional facility) *remain* in keeplock confinement, and not be placed in SHU confinement, which Plaintiff alleges was "more restrictive."[37]

The first problem with Plaintiff's substantive due process claim is that Plaintiff does not adduce any evidence in support of his allegation that SHU confinement in Upstate C.F. was in fact more restrictive than keeplock confinement.  Rather, all that Plaintiff offers is *argument*, which is (of course) insufficient to defeat a motion for summary judgment.[38]  I note that

---

[36]     *Lowrence v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) [internal quotations marks and citations omitted], *aff'g*, 91-CV-1196, *Memorandum-Decision and Order* (N.D.N.Y. Jan. 26, 1993) (DiBianco, M.J.) (granting summary judgment to defendants in inmate's civil rights action).

[37]     (Dkt. No. 1, ¶ 7, "First Cause of Action," ¶ 6, "Statement of Facts" [Plf.'s Compl.].)

[38]     See *Chavis v. Kienert*, 03-CV-0039, 2005 WL 2452150, at *7 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) ("[I]t is well established that arguments in legal memoranda may not in themselves serve to create a triable issue of material fact when unsupported by accompanying affidavits, pleadings, depositions, or stipulations.") [internal quotation marks and citation omitted].  (*Compare* Dkt. No. 72, Part 2 at 8, 14 [Plf.'s Mem. of Law, arguing that SHU confinement at Upstate C.F. was more restrictive than keeplock confinement] *with* Dkt. No. 1, ¶ 7, "First Cause of Action," ¶ 6, "Statement of Facts" [Plf.'s Verified Compl., not offering specifics of how Upstate C.F. SHU was more restrictive than keeplock confinement] *and* Dkt. No. 72 [Plf.'s "Affidavit in Opposition," not offering specifics of how Upstate C.F. SHU was

Plaintiff's sworn allegation in his Verified Complaint that his confinement in the Upstate C.F.

SHU was "more restrictive" than keeplock confinement[39] is too conclusory to constitute evidence

sufficient to create an issue of fact for purposes of Rule 56.[40]

The second problem with Plaintiff's substantive due process claim is that, even if the

conditions of confinement in the Upstate C.F. SHU were "more restrictive" than conditions in

keeplock confinement, that evidence alone would not create a dispute of material fact with

respect to Defendants' due process argument. Rather, to create a liberty interest protected by the

Due Process Clause, the conditions of such confinement must be so much more restrictive as to

impose "an atypical and significant hardship on the inmate."[41] Again, Plaintiff has not adduced

any *evidence* (only argument) in support of such a hardship.[42]

Indeed, after Defendants filed their motion on June 20, 2005, two district courts

---

more restrictive than keeplock confinement].)

[39]     (Dkt. No. 1, ¶ 7, "First Cause of Action" [Plf.'s Compl.].)

[40]     *See*, *supra*, Part III of this Report-Recommendation (discussing conclusory
assertions in affidavits).

[41]     *Sandlin v. Connor*, 515 U.S. 472, 483-484 (1995) (to create a liberty interest
protected by the Fourteenth Amendment's Due Process Clause, the interest "will generally be
limited to freedom from restraint which . . . imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life").

[42]     I note that, even if Plaintiff had been transferred from the *general inmate
population* to a "normal" SHU, that change on confinement would generally not constitute a
protected liberty interest unless the SHU confinement lasted for more than 101 days. *See Sealey
v. Giltner*, 197 F.3d 578, 589-590 (2d Cir. 1999). The Second Circuit, without delineating the
full scope of what constitutes "normal" SHU conditions, has stated that conditions in which
prisoners "are kept in solitary confinement for twenty-three hours a day, provided one hour of
exercise in the prison yard per day, and permitted two showers per week" are considered
"normal" SHU conditions. *Oritz v. McBride*, 830 F.3d 649, 655 (2d Cir. 2004).

(including this Court) issued decisions addressing the very issue at hand–whether an inmate has a due process liberty interest in not having his sentence of keeplock confinement at one prison "converted" to a sentence of SHU confinement at Upstate C.F., without receiving a hearing regarding the conversation.  Both decisions answered this question in the negative, reasoning that all the process to which the plaintiff was due was afforded through his initial disciplinary hearing (which resulted in the sentence of keeplock confinement).  *See Holmes v. Grant*, 03-CV-3426, 2006 U.S. Dist. LEXIS 15743, at *57-63 (S.D.N.Y. March 31, 2006) (inmate had no due process liberty interest in not being transferred from keeplock confinement at Sing Sing C.F. to SHU confinement at Upstate C.F. without a hearing–other than the initial disciplinary hearing that resulted in the sentence of keeplock confinement), *accord*, *Chavis v. Kienert*, 03-CV-0039, 2005 WL 2452150, at *9-10 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) (transfer from keeplock confinement at Coxsackie C.F. to SHU confinement at Upstate C.F.).[43]

However, even if Plaintiff did have such a protected liberty interest, he would have to show that the state action was arbitrary in the constitutional sense and therefore violative of substantive due process.  I find no evidence of such arbitrariness.  Rather, the "conversion" appears to have occurred pursuant to an existing regulatory scheme.[44]

---

[43]    *See also McKinnon v. Patterson*, 568 F.2d 930, 936 (2d Cir. 1977) ("Obviously keeplock is the mildest form of punitive segregation.  Yet, except for the fact that the prisoner is confined to his own cell and retains access to his personal belongings, the deprivations involved in keeplock are essentially the same as those involved in segregation in a special housing unit.").

[44]    *See* 7 N.Y.C.R.R. § 301.6(a)(2) ("An inmate in . . . Upstate Correctional Facility may be housed in a special housing unit for reasons such as, but not limited to, the following: . . . for confinement pursuant to a disposition of a disciplinary (Tier II) or superintendent's (Tier III) hearing . . . .").

17

### 2.    Procedural Due Process Claim

"[Courts] examine procedural due process questions in two steps: the first asks whether

there exists a liberty or property interest which has been interfered with by the State . . . ; the

second examines whether the procedures attendant upon that deprivation were constitutionally

sufficient . . . ."[45]  Based upon the record before me, I find that no reasonable fact-finder could

conclude that Plaintiff had a protected liberty or property interest in not having his keeplock

sentence "converted" to an SHU sentence for the reasons stated above.  *See*, *supra*, Part IV.A.1.

### 3.    Qualified Immunity

However, even if Plaintiff had established a viable due process claim, an alternative

ground exists for dismissing that claim–qualified immunity.  "Once qualified immunity is

pleaded, plaintiff's complaint will be dismissed unless defendant's alleged conduct, when

committed, violated 'clearly established statutory or constitutional rights of which a reasonable

person would have known.'"[46]  In determining whether a particular right was *clearly established*,

courts in this circuit consider three factors:

> (1) whether the right in question was defined with 'reasonable
> specificity'; (2) whether the decisional law of the Supreme Court and
> the applicable circuit court support the existence of the right in
> question; and (3) whether under preexisting law a reasonable
> defendant official would have understood that his or her acts were
> unlawful.[47]

---

[45]    *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).

[46]    *Williams v. Smith*, 781 F.2d 319, 322 (2d Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 [1982]).

[47]    *Jermosen v. Smith*, 945 F.2d 547, 550 (2d Cir. 1991) (citations omitted), *cert. denied*, 503 U.S. 962 (1992); *see also Calhoun v. New York State Division of Parole*, 999 F.2d 647, 654 (2d Cir. 1993); *Prue v. City of Syracuse*, 26 F.3d 14, 17-18 (2d Cir. 1994).

Regarding the issue of whether *a reasonable person would have known* he was violating such a clearly established right, this "objective reasonableness"[48] test is met if "officers of reasonable competence could disagree on [the legality of defendant's actions]."[49]  As the Supreme Court explained,

> [T]he qualified immunity defense . . . provides ample protection to all but the plainly incompetent or those who knowingly violate the law. . . . Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized.[50]

Furthermore, courts in the Second Circuit recognize that "the use of an 'objective reasonableness' standard permits qualified immunity claims to be decided as a matter of law."[51]

Here, I find that it was not clearly established in November of 2002 (nor is it clearly established now) that Plaintiff had a federal legal right to not have his sentence of keeplock confinement "converted" to a sentence of SHU confinement at Upstate C.F. without a hearing regarding the conversion, for the reasons stated above in Part IV.A.1. of this Report-

---

48      *See Anderson v. Creighton*, 107 S.Ct. 3034, 3038 (1987) ("[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective reasonableness of the action.'") (quoting *Harlow*, 457 U.S. at 819); *Benitez v. Wolff*, 985 F.2d 662, 666 (2d Cir. 1993) (qualified immunity protects defendants "even where the rights were clearly established, if it was objectively reasonable for defendants to believe that their acts did not violate those rights").

49      *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Malsh v. Correctional Officer Austin*, 901 F. Supp. 757, 764 (S.D.N.Y. 1995) (citing cases); *Ramirez v. Holmes*, 921 F. Supp. 204, 211 (S.D.N.Y. 1996).

50      *Malley*, 475 U.S. at 341.

51      *Malsh*, 901 F. Supp. at 764 (citing *Cartier v. Lussier*, 955 F.2d 841, 844 [2d Cir. 1992] [citing Supreme Court cases]).

Recommendation.  Even if that point of law had been clearly established, I find that, at the very least, it is possible that a reasonable person could not have known that Defendants' actions were violating that clearly established right; in other words, it was objectively reasonable for Defendants to believe that their acts did not violate Plaintiff's rights.  I base this last finding on the lack of any known controversy surrounding Defendants' interpretation of 7 N.Y.C.R.R. § 301.6(a)(2) as authorizing a "conversion" of Plaintiff's sentence, during the time in question.[52]

Based on each of these alternative grounds, I recommend that Plaintiff's first cause of action for denial of due process (during the conversion of his disciplinary sentence from one of keeplock confinement to one of SHU confinement) be dismissed.

**B.** **Whether Plaintiff's Second Cause of Action (Alleging that Defendant Tousignant Was Deliberately Indifferent to Plaintiff's Serious Medical Needs) Should Be Dismissed**

Generally, I agree with the arguments made by Defendants in their memorandum of law (Dkt. No. 67, Part 5 at 13-17 [Defs.' Mem. of Law]), and I reject the arguments made by Plaintiff in his memorandum of law (Dkt. No. 72, Part 2 at 17-22 [Plf.'s Mem. of Law]).

To prevail on a claim of deliberate indifference to a serious medical need, a plaintiff must show two things: (1) that he had a sufficiently serious medical need; and (2) that the defendant was deliberately indifferent to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

---

[52]      *See* 7 N.Y.C.R.R. § 301.6(a)(2) ("An inmate in . . . Upstate Correctional Facility may be housed in a special housing unit for reasons such as, but not limited to, the following: . . . for confinement pursuant to a disposition of a disciplinary (Tier II) or superintendent's (Tier III) hearing . . . .").

20

### 1.    Serious Medical Need

Here, Plaintiff has adduced no evidence that his asthma condition constituted a serious

medical need under the circumstances.  For example, it is an undisputed fact that, at the time

Plaintiff transferred to Upstate C.F. on November 6, 2002, a medical assessment noted that

Plaintiff had "[no] current meds" but was in possession of an "outdated albuteral inhaler," which

was "charted for [nurse practitioner] review of need for inhaler."[53]  It is also an undisputed fact

that an additional medical assessment of that date similarly noted that Plaintiff had "[no] current

meds" and that the albuteral inhaler was "2 yrs. old."[54]  While I decline to perform an

independent review of the record to find proof of a factual dispute (as I discussed above in Part

III of this Report-Recommendation), I note that Plaintiff, in his memorandum of law, has alluded

to (but not actually cited) various unidentified medical records from Attica C.F., which he

implies create a factual dispute as to the seriousness of his medical condition.[55]  The only such

medical record that I could find from Attica C.F. does not create a factual dispute.[56]

Simply stated, I find that, based upon the current record, no reasonable fact-finder could

conclude that Plaintiff's asthma condition was sufficiently serious for purposes of the Eighth

---

[53]     (*Compare* Dkt. No. 67, Part 3, ¶ 8 [Defs.' Rule 7.1 Statement, asserting fact, and
citing evidence in support of fact] *with* Dkt. No. 72, ¶ 8 [Plf.'s Rule 7.1 Response, not denying
fact or citing evidence controverting fact].)

[54]     (*Compare* Dkt. No. 67, Part 3, ¶ 9 [Defs.' Rule 7.1 Statement, asserting fact, and
citing evidence in support of fact] *with* Dkt. No. 72, ¶ 9 [Plf.'s Rule 7.1 Response, not denying
fact or citing evidence controverting fact].)

[55]     (Dkt. No. 72, Part 2 at 18-21.)

[56]     (*See*, *e.g.*, Dkt. No. 67, Part 6, Ex. 5 [Defs.' Motion Papers, attaching medical
record dated 11/1/02 from Attica C.F., indicating that "no meds" were being prescribed, at the
time, for Plaintiff's asthma condition].)

Amendment.  As the Western District of New York recently held,

> The mere fact that an inmate has an asthmatic condition does not necessarily mean that the inmate has a serious medical need, although an actual asthma attack, depending on the severity, may be a serious medical condition. . . .  Significantly, in the instant case, when [plaintiff's] request for permission to bring his asthma medication with him to the city jail was denied, [plaintiff] was not then exhibiting any symptoms of an imminent asthma attack. . . .  Accordingly, the record demonstrates that the objective prong of the deliberate indifference standard has not been met . . . .

*Scott v. DelSignore*, 02-CV-0029, 2005 U.S. Dist. LEXIS 6070, at *25-27 (W.D.N.Y. Feb. 18, 2005) (granting defendants' cross-motion for summary judgment); *accord*, *Murphy v. Corr. Med. Servs.*, 04-CV-0071, 2006 U.S. Dist. LEXIS 10775, at *14-16 (D. Vt. Jan. 30, 2006) (asthma condition not serious medical need under circumstances); *Patterson v. Lilley*, 02-CV-6056, 2003 U.S. Dist. LEXIS 11097, at *12-13 (S.D.N.Y. June 30, 2003) (asthma condition not serious medical need under circumstances); *Sulkowska v. City of New York*, 129 F. Supp.2d 274, 292-293 (S.D.N.Y. 2001) (asthma condition not serious medical need under circumstances); *Reyes v. Corrections Officer Bay*, 97-CV-6419, 1999 U.S. Dist. LEXIS 13404, at *5 (S.D.N.Y. Sept. 1, 1999) (asthma condition not serious medical need under circumstances).[57]

---

[57]     *See also Bates v. Sullivan*, 6 Fed. Appx. 425, 228 (7th Cir. 2001) ("While asthma, depending on its degree, may be a serious medical condition . . . , there is no evidence in this record that [plaintiff] was suffering a serious asthmatic attack when [defendant] allegedly refused to give him an inhaler."); *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) ("[B]reathing problems, chest pains, dizziness, sinus problems, headaches and loss of energy . . . are not sufficiently serious to be constitutionally actionable."); *Oliver v. Deen*, 77 F.3d 156, 160-161 (7th Cir. 1996) ("mild" asthma condition that "never required outside hospitalization" was not "a medical need sufficiently serious to implicate the Constitution").

## 2.      Deliberate Indifference

Moreover, even if I were to assume, for the sake of argument, that Plaintiff's asthma condition was a serious medical need, he has adduced no evidence that Defendant Tousignant was deliberately indifferent to that serious medical need.  At most, the evidence indicates that there may have been a difference of opinion between certain members of the medical staff at Upstate C.F. and Plaintiff.  For example, Plaintiff refers to the nurse whom he saw on November 9, 2002 as a "know it all nurse."[58]  He goes on to describe how he disagreed with her diagnosis regarding his skin rash.[59]  However, such a difference of opinion is not enough to establish a claim under the Eighth Amendment.[60]  Even if a reasonable fact-finder could somehow construe the record as establishing a hint of *negligence* on the part of certain members of the medical staff at Upstate C.F., such negligence would not be enough to establish a claim under the Eighth Amendment.[61]

Noticeably missing is any evidence of the sort of *criminal recklessness* necessary to establish deliberate indifference on the part of Defendant Tousignant (or any member of the medical staff at Upstate C.F.).  Indeed, according to the record evidence (including Plaintiff's

---

[58]      (Dkt. No. 1, ¶ 6 [Plf.'s Compl.].)

[59]       (*Id.*)

[60]      *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

[61]      *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

23

own sworn assertions), it appears clear that Plaintiff was given fairly regular medical attention by the medical staff at Upstate C.F. during the relevant time period.[62]  As the Second Circuit has explained,

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls.  [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated.  Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[] understandably seeks . . . .  We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution. . . .   The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . .   The essential test is one of medical necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

### 3.    Personal Involvement

Finally, even if Plaintiff's asthma condition were a serious medical need, and even if certain members of the medical staff at Upstate C.F. exhibited deliberate indifference to that need, Plaintiff has adduced no evidence that Defendant Tousigant was *personally involved* in that alleged constitutional deprivation.   A defendant's personal involvement in alleged unlawful

---

[62]    (*See*, *e.g.*, Dkt. No. 1, ¶ 6 [Plf.'s Verified Compl., asserting that he was seen by medical staff at Upstate C.F. on 11/6/02, 11/9/02, 12/9/02]; Dkt. No.72, ¶¶ 14, 16 & Ex. O [Plf.'s "Affidavit in Opposition," asserting that he was seen by medical staff at Upstate C.F. on 1/1/03, 1/11/03, 4/21/03]; Dkt. No. 67, Part 6, Exs. 10, 12 [Defs.' Motion Papers, attaching documents indicating that Plaintiff was seen on, among other dates, 1/8/03, 2/14/03, 4/22/03].)

conduct is a prerequisite for a finding of liability in an action under 42 U.S.C. § 1983.[63]

Supervisory officials such as prison superintendents are personally involved in a constitutional

violation only if: (1) they directly participated in that violation; (2) they failed to remedy that

violation after learning of it through a report or appeal; (3) they created, or allowed to continue, a

policy or custom under which the violation occurred; (4) they were grossly negligent in managing

subordinates who caused the violation; or (5) they exhibited deliberate indifference to the rights

of inmates by failing to act on information indicating that the violation was occurring.[64]

Here, the closest Plaintiff comes to establishing the personal involvement of Defendant

Tousignant is through the following: (1) his sworn allegation that he copied Defendant

Tousignant on his complaint to Defendant LeClaire, submitted at some point between November

9, 2002, and November 20, 2002, regarding his alleged allergy to milk; (2) his argument that, on

December 18, 2002, Defendant Tousignant signed a notation on an investigative report, stating,

"There has been <u>NO</u> letters [sic], etc., rec'd by my office from Inmate Carlisle 98A5948"; and (3)

his letter to her dated May 5, 2003, stating that he had experienced the symptoms of a mild

asthma condition on April 23, 2003, and requesting that she look into whether he could be issued

an inhaler; and her response dated May 16, 2003, advising him, "An inhaler has <u>not</u> been deemed

medically necessary [at] this time.  It does <u>not</u> appear as though you have had any respiratory

problems in a very long time.  If you do experience any--you will be seen on Emergency Sick-

---

[63]     *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987).

[64]     *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (adding fifth prong); *Wright v. Smith*. 21 F.3d 496, 501 (2d Cir. 1994) (adding fifth prong); *Williams v. Smith*, 781 F.2d 319, 323-324 (2d Cir. 1986) (setting forth four prongs).

Call."[65]

However, this evidence is insufficient to link Defendant Tousignant to the alleged

deliberate indifference to Plaintiff's serious medical needs by various subordinate nurses at

Upstate C.F. sufficient to impose liability on her for purposes of 42 U.S.C. § 1983.  With regard

to the first piece of evidence (i.e., regarding the unidentified milk-allergy complaint of November

2002), Plaintiff's sworn allegation about his milk-allergy complaint is too conclusory to create a

factual issue.[66]

With regard to the second piece of evidence (i.e., regarding Defendant Tousignant's

[65]      (Dkt. No. 1, ¶ 6 [Plf.'s Verified Compl., asserting that, at some point between 11/9/02 and 11/20/02, he submitted a complaint about a nurse to Def. LeClaire, copying Def. Tousignant on the complaint]; Dkt. No. 67, Part 3, ¶¶ 19-20 [Defs.' Rule 7.1 Statement, containing factual assertions about the exchange of letters in May of 2003, which assertions were uncontroverted by the corresponding paragraphs of Plaintiff's Rule 7.1 Response]; Dkt. No. 67, Part 6, Ex. 11 [Defs.' Motion Papers, attaching letters dated 5/5/03 and 5/16/03]; Dkt. No. 72, Part 2 at 22-23 [Plf.'s Mem. of Law, arguing that it was Def. Tousignant who signed the investigative report notation of 12/18/02].)

[66]      See Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); Patterson, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; Applegate, 425 F.2d at 97 (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings"); see, e.g., Bickerstaff v. Vassar Oil, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; West-Fair Elec. Contractors v. Aetna Cas. & Sur., 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); Meiri v. Dacon, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), cert. denied, 474 U.S. 829 (1985); Applegate, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

alleged misrepresentation that she never received the milk-allergy complaint), the materiality of this piece of evidence depends on the existence of any evidence indicating that (1) Plaintiff in fact submitted a complaint to Defendant LeClaire, (2) that Plaintiff in fact copied Defendant Tousignant on that complaint, (3) that Defendant Tousignant's office in fact *received* that copy, and (4) that either the copy was read by Defendant Tousignant or was kept and retained in her office files.  Because no evidence exists of these facts, the second piece of evidence simply is not material to the issue of whether Defendant Tousignant was personally involved in any constitutional deprivation.[67]

Finally, with regard to the third piece of evidence (i.e., regarding the exchange of letters between Plaintiff and Defendant Tousignant in May of 2003), this evidence does not in any way indicate that Defendant Tousignant (1) *directly participated* in any constitutional violation, (2) failed to remedy any constitutional violation after *learning* of it through a report or appeal, (3) created, or allowed to continue, a *policy or custom* under which any constitutional violation occurred, (4) was *grossly* negligent in managing subordinates who caused any constitutional violation, or (5) exhibited *deliberate indifference* to the rights of Plaintiff by failing to act on information indicating that any constitutional violation was occurring.

Based on each of these alternative grounds, I recommend that Plaintiff's second cause of action for deliberate indifference to a serious medical need be dismissed.

---

[67]     (*See also* Dkt. No. 67, Part 6, Ex. 12 [Defs.' Motion Papers, attaching Def. Tousignant's response to Plf.'s interrogatories, wherein she objects to Plf.'s suggestion that her duties included answering any formal "complaints" such as those that take the form of grievances].)

**C.** **Whether Plaintiff's Third Cause of Action (Alleging that Defendant Bouyea Violated Various of Plaintiff's Constitutional Rights by Unlawfully Searching His Cell, Seizing His Legal Papers, and Issuing Him a Misbehavior Report) Should Be Dismissed**

Generally, I agree with the arguments made by Defendants in their memorandum of law (Dkt. No. 67, Part 5 at 17-21 [Defs.' Mem. of Law]), and I reject the arguments made by Plaintiff in his memorandum of law (Dkt. No. 72, Part 2 at 23-25 [Plf.'s Mem. of Law]).

**1.** **Fourth Amendment Search-and-Seizure Claim**

With respect to Plaintiff's Fourth Amendment search-and-seizure claim, the Fourth Amendment's proscription against unreasonable searches and seizures does not apply within the confines of a prison cell.[68]  The Court has the power to dismiss Plaintiff's Fourth Amendment claim even though Defendants do not raise an argument concerning the Fourth Amendment in their motion papers (apparently due to their belief that Plaintiff's Complaint does not contain a Fourth Amendment claim).  This is because the Court has the power to *sua sponte* dismiss such claims under several legal authorities.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii),(iii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . is frivolous . . . [or] fails to state a claim on which relief may be granted . . . ."); Fed. R. Civ. P. 12(h)(3) ("Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction over the subject matter, the court shall dismiss the action.").

**2.** **First Amendment Denial-of-Access-to-Courts Claim**

With respect to Plaintiff's First Amendment denial-of-access-to-the-courts claim, Defendants are correct that this claim does not plead sufficient facts to give Defendants fair

---

[68]     *See Hudson v. Palmer* 468 U.S. 517, 526 (1984); *Demaio v. Mann*, 877 F. Supp. 89, 95 (N.D.N.Y.), *aff'd*, 122 F.3d 1055 (2d Cir. 1995).

notice of what Plaintiff's claim is and the grounds upon which it rests.  (Dkt. No. 67, Part 5 at 1 [Defs.' Mem. of Law].)

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although Rule 8(a)(2) does not require a pleading to state the elements of a prima facie case,[69] it does require the pleading to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[70]  The purpose of this rule is to "facilitate a proper decision on the merits."[71]  A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[72]  The Supreme Court has characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has rejected

---

[69]      *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511-512, 515 (2002).

[70]      *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[71]      *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (quoting *Conley*, 355 U.S. at 48).

[72]      *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]); *U.S. v. Casado*, 303 F.3d 440, 449 n.5 (2d Cir. 2002) (citing, for similar purpose, unpublished table opinion of *U.S. v. Terry*, 927 F.2d 593 [2d Cir. 1991].)

judicially established pleading requirements that exceed this liberal requirement.[73]  However,

even this liberal notice pleading standard "has its limits."[74]

      Here, Plaintiff's First Amendment denial-of-access-to-the-courts allegations fail to state a

claim, even under this liberal notice-pleading standard.[75]  Noticeably missing from Plaintiff's

Complaint is any allegation that this alleged deprivation of legal materials actually caused him

any harm.  Plaintiff's conclusory argument in his memorandum of law that the confiscation

---

      [73]     *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513-514 (2002) (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

      [74]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003); *see, e.g.*, *Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635 (pleading did not meet Rule 8[a][2]'s liberal requirement); *accord*, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several other decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

      [75]     (Dkt. No. 1, ¶ 7, "Third Cause of Action" [Plf.'s Compl., alleging merely that "[m]y right to redress the government for violations of its staff have been denied to me here at Upstate."]; Dkt. No. 1, ¶ 6, "Facts" [Plf.'s Compl., alleging that, on 1/20/03, during a search of Plaintiff's cell, Def. Bouyea asked for, and Plaintiff gave to him, all of Plaintiff's "reading materials," and that, after the search of his cell, Plaintiff noticed that about "50 pages of legal work were missing" from an active case, specifically "1 notice of appeal, 1 Court of Claims claim, 1 motion for summary judgment, 1 notice of motion to amend, 1 court decision for summary judgment motion".)

caused Plaintiff to "drop" a pending legal action[76] comes too late in this action to act as a means

of amending his denial-of-access-to-the-courts claim in his Complaint; and in any event his

argument is too devoid of specifics to state a claim (e.g., what was the legal action, who were the

defendants, what was the court, what was the case number, what was the final order dismissing

or disposing of the case, etc).  Finally, even if Plaintiff's allegations were sufficient to state a

First Amendment claim for denial of access to the courts, he has not adduced any evidence to

establish that claim, sufficient to survive Defendants' motion for summary judgment.

> **3.      Fifth and/or Fourteenth Amendment Due Process Claim
> Regarding False-Misbehavior Report**

With respect to Plaintiff's claim that Defendant Bouyea unlawfully issued him a false

misbehavior report, "[i]t is well established that in the absence of other aggravating factors, an

inmate enjoys no constitutional right against the issuance of a false misbehavior report."[77]  "The

rationale supporting this general rule is that an inmate's procedural due process rights are

adequately safeguarded by the opportunity to challenge and present evidence to rebut the false

accusations at a disciplinary hearing."[78]  Based on the current record, I find that no rational fact-

finder could conclude that the misbehavior report was "false," or that any "aggravating factors"

exist sufficient to confer upon Plaintiff a right to not be issued that report.  I note that Plaintiff

does not allege that the disciplinary hearing (which resulted from the misbehavior report) was

---

[76]      (Dkt. No. 72, Part 2 at 24 [Plf.'s Mem. of Law])

[77]      *Ciaprazi v. Goord*, 02-CV-0915, 2005 WL 3531464, at *13 (N.D.N.Y. Dec. 22, 2005) (Sharpe, J.; Peebles, M.J.) (citations omitted); *see also Hodges v. Jones*, 873 F. Supp. 737, 743-744 (N.D.N.Y. 1995) (Chin, J.).

[78]      *Ciaprazi,* 2005 WL 3531464, at *13 (citation omitted).

plagued by any due process violations, or was invalidated on appeal.[79]

Alternatively, Plaintiff has failed to adduce any evidence that it was Defendant Bouyea's misbehavior report concerning Plaintiff, and not Corrections Officer P. Burgess's misbehavior report concerning Plaintiff (issued earlier that same day), that resulted in Plaintiff's additional 90-day sentence in the Upstate C.F. SHU.[80]

In reaching my conclusion that Plaintiff's due process claim lacks merit, I specifically reject two arguments, or legal theories, advanced by Plaintiff.  First, I reject Plaintiff's suggestion that Defendant Bouyea's conduct on January 20, 2003 is actionable because it was somehow caused by the earlier due process violation, namely, the conversion of Plaintiff's "keeplock" confinement to SHU confinement.[81]  Setting aside the fact that I have already concluded that no such earlier due process violation occurred, the connection between the prior alleged due process violation in September and October of 2002 and the subsequent alleged due process violation in January of 2003 is simply too attenuated to support any theory of causation.  Indeed, if anything, the allegation that it was the prior alleged due process violation that caused Plaintiff to be sentenced to an additional 90 days of SHU confinement in January of 2003 undercuts Plaintiff's allegation that it was Defendant Bouyea's alleged misconduct that caused Plaintiff to receive the

---

[79]    (Dkt. No. 1, ¶ 6.)

[80]    (*See* Dkt. No. 67, Part 5 at 19 [Defs.' Mem. of Law]; compare Dkt. No. 67, Part 6, Ex. 13 [Defs.' Motion Papers, attaching 1/20/03 misbehavior report issued by C.O. Burgess, concerning incident occurring at 9:50 a.m.] *with* Dkt. No. 67, Part 6, Ex. 13 [Defs.' Motion Papers, attaching 1/20/03 misbehavior report issued by Def. Bouyea, concerning incident occurring at 10:10 a.m.].)

[81]    (Dkt. No. 1, ¶ 7, "Third Cause of Action" [asserting causation theory]; Dkt. No. 72, Part 2 at 1, 24 [Plf.'s Mem. of Law, repeating causation theory].)

additional 90-day sentence.

Second, I reject Plaintiff's suggestion that Defendant Bouyea's alleged "violation of
Department guidelines" or "Facility rules" regarding cell searches constitutes a violation of the
United States Constitution or federal law sufficient to give rise to a cause of action under 42
U.S.C. 1983.[82]  Section 1983 provides, in pertinent part, "Every person who . . .subjects, or
causes to be subjected, any citizen of the United States or other person within the jurisdiction
thereof to the deprivation of any rights, privileges, or immunities secured by *the Constitution and
laws*, shall be liable to the party injured . . . ."  42 U.S.C. § 1983 [emphasis added].  The term
"the Constitution and laws" refers to United States Constitution and *federal* laws.[83]  A violation
of a state law or regulation, *in and of itself*, does not give rise to liability under 42 U.S.C. §
1983.[84]  Furthermore, the violation of a DOCS Directive, alone, is not even a violation of New

---

[82]     (Dkt. No. 1, ¶ 6.)

[83]     *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970) ("The terms of § 1983
make plain two elements that are necessary for recovery.  First, the plaintiff must prove that the
defendant has deprived him of a right secured by the 'Constitution and laws' *of the United
States*.") (emphasis added); *Patterson v. Coughlin*, 761 F.2d 886, 890 (2d Cir. 1985) ("Recovery
under 42 U.S.C. § 1983 . . . is premised upon a showing, first, that the defendant has denied the
plaintiff a constitutional or *federal* statutory right. . . .") (citation omitted; emphasis added);
*Fluent v. Salamanca Indian Lease Auth.*, 847 F. Supp. 1046, 1056 (W.D.N.Y. 1994) ("The initial
inquiry in a § 1983 action is whether the Plaintiff has been deprived of a right 'secured by the
Constitution and laws' *of the United States*.") [emphasis added].

[84]     *See Doe v. Conn. Dept. of Child & Youth Servs.*, 911 F.2d 868, 869 (2d Cir. 1990)
("[A] violation of state law neither gives [plaintiff] a § 1983 claim nor deprives defendants of the
defense of qualified immunity to a proper § 1983 claim."); *Patterson*, 761 F.2d at 891 ("[A] state
employee's failure to conform to state law does not in itself violate the Constitution and is not
alone actionable under § 1983 . . . .") (citation omitted); *Murray v. Michael*, 03-CV-1434, 2005
WL 2204985, at *10 (N.D.N.Y. Sept. 7, 2005) (DiBianco, M.J.) ("[A]ny violations of state
regulations governing the procedures for disciplinary hearings . . . do not rise to the level of
constitutional violations.") (citation omitted); *Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123
(S.D.N.Y. 2002) ("[V]iolations of state law procedural requirements do not alone constitute a

York State law or regulation;[85] this is because a DOCS Directive is "merely a system the [DOCS] Commissioner has established to assist him in exercising his discretion," which he retains, despite any violation of that Directive.[86]

Having said that, it is true that a state may, *under certain circumstances*, create a liberty interest protected by the Due Process Clause through its enactment of certain statutory or regulatory measures. Specifically, in 1995, the Supreme Court held that, while states may still under certain circumstances create a liberty interest protected by the Due Process Clause, the interest "will generally be limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[87] Here, however, Plaintiff does not show, or even allege, that Defendant Bouyea's search of his cell imposed on him an atypical and significant hardship in relation to the ordinary incidents of prison life.

### 4.     Any First Amendment Retaliation Claim

With respect to any suggestion by Plaintiff that the misbehavior report was issued as a form of retaliation against him, claims of retaliation find their roots in the First Amendment.[88]

---

deprivation of due process since '[f]ederal constitutional standards rather than state law define the requirements of procedural due process.'") (citing *Russell v. Coughlin*, 910 F.2d 75, 78 n.1 [2d Cir. 1990]).

[85]    *See Rivera v. Wohlrab*, 232 F. Supp.2d 117, 123 (S.D.N.Y. 2002) (citation omitted); *Lopez v. Reynolds*, 998 F. Supp. 252, 259 (W.D.N.Y. 1997).

[86]    *See Farinaro v. Coughlin*, 642 F. Supp. 276, 280 (S.D.N.Y. 1986).

[87]    *Sandlin v. Connor*, 515 U.S. 472, 483-484 (1995).

[88]    *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004).

Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights.[89]  Because of the relative ease with which claims of retaliation can be incanted, however, courts have scrutinized such retaliation claims with particular care.[90]  As the Second Circuit has noted,

> [t]his is true for several reasons.  First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated.  Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration.  This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

To prevail on a First Amendment claim under 42 U.S.C. § 1983, a Plaintiff must prove by the preponderance of the evidence that: (1) the speech or conduct at issue was "protected"; (2) the defendant took "adverse action" against the plaintiff–namely, action that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action--in other words, that the protected conduct was a "substantial or motivating factor" in the

---

[89]      *See Gill*, 389 F.3d at 381-383.

[90]      *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983).

defendant's decision to take action against the plaintiff.[91]   Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone.[92]

Here, there is no allegation in Plaintiff's Complaint that he was engaging in protected activity immediately before the events in question, or that Defendant Bouyea was retaliating against Plaintiff for engaging in that protected activity.[93]   Even if Plaintiff's Complaint could somehow be construed as alleging retaliation, there is no evidence in the record to support such a claim.

I acknowledge that Plaintiff, in his "Affidavit in Opposition," states that Defendant Bouyea searched his cell "in retaliation for Plaintiff complaining about the practice of C.O. Burgess denying Plaintiff his 1 hour recreation."[94]   However, several problems exist with this assertion: (1) Plaintiff does not assert such a theory of retaliation in his Complaint, and it is too late at this stage of the proceeding for Plaintiff to be allowed, with any fairness to Defendants, to constructively amend the allegations in his Complaint through an affidavit;[95] (2) Plaintiff's

---

[91]   *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d 489, 492 [2d. Cir. 2001]).

[92]   *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996) (citations omitted)

[93]   (Dkt. No. 1, ¶ 7, "Third Cause of Action," ¶ 6, "Statement of Facts" [Plf.'s Verified Compl., not alleging either that Plaintiff had been engaging in protected activity or that Def. Bouyea's search had been in retaliation for that protected activity].)

[94]   (Dkt. No. 72, ¶ 25.)

[95]   *Chavis v. Kienert*, 03-CV-0039, 2005 WL 2452150, at *7 (N.D.N.Y. Sept. 30, 2005) (Scullin, C.J.) ("The Court notes that opposition papers are not the proper vehicles for adding new causes of action . . . .") [citation omitted].

"Affidavit" is neither notarized nor sworn to pursuant to 28 U.S.C. § 1746 (which requires a

declaration that the assertions are made "under penalty of perjury"); and (3) the assertion in

question in Plaintiff's "Affidavit" is entirely conclusory, lacking the specifics necessary to

constitute evidence sufficient to create an issue of fact (e.g., what "practice of C.O. Burgess

denying Plaintiff his 1 hour recreation," and what complain[t] about [that] practice"?).[96]

Based on each of these alternative grounds, I recommend that Plaintiff's third cause of

action be dismissed.

**D.     Whether Plaintiff Has Shown Cause, Under Fed. R. Civ. P. 56(f), for a Stay
         of Consideration of Defendants' Motion for Summary Judgment Pending
         Completion of Further Discovery to Enable Plaintiff to Oppose Defendants'
         Motion**

Contrary to Plaintiff's repeated insistence to the contrary, there is simply no indication on

the docket that Plaintiff's alleged Rule 56(f) motion was filed with the Court, or even submitted

to the Court, by Plaintiff on or about July 1, 2005. In any event, I will consider Plaintiff's Rule

56(f) argument now, in response to Defendants' motion for summary judgment.

Rule 56(f) of the Federal Rules of Civil Procedure provides:

> **(f) When Affidavits Are Unavailable.** Should it appear from
> the affidavits of a party opposing the motion that the party cannot for
> reasons stated present by affidavit facts essential to justify the party's
> opposition, the court may refuse the application for judgment or may
> order a continuance to permit affidavits to be obtained or depositions
> to be taken or discovery to be had or may make such other order as is
> just.

---

[96]     *See*, *supra*, Part III of this Report-Recommendation (discussing conclusory
assertions in affidavits). I note that the necessary specific facts in support of a retaliation claim
are not provided by Plaintiff even if one were to construe Paragraph 17 of his "Affidavit in
Opposition" as referring to the failure of his cell door to open due to "the way C.O. Burgess hits
the button to open" that door. (Dkt. No. 72, ¶ 17.)

Fed. R. Civ. P. 56(f).

Here, Plaintiff asserts in an affirmation (attached to his papers in opposition to Defendants' motion) the following facts: (1) at some point, he "served on the Defendants . . . interrogatories, requests for production of documents & requests to admit"; (2) "the Defendants weren't forthcoming [with regard to this discovery] as required; and (3) the discovery that he has been denied consists of the following: (a) a copy of, and the meaning of, "a document [shown to Plaintiff] by one of the Corrections Counselors that stated "<u>Converted</u> Assessment," and a copy of the appellate decisions regarding Plaintiff's September 2002 disciplinary convictions and his subsequent grievances about the enhancement of his disciplinary hearing sentence–all of which Plaintiff asserts are relevant to his **First Cause of Action**; (b) a copy of Plaintiff's medical records from Attica C.F., which Plaintiff asserts are relevant to his **Second Cause of Action** (and the request for which Plaintiff claims he directed to *Defendant Tousignant*); and (c) a copy of Plaintiff's deposition transcript and medical records, which Plaintiff asserts is relevant to his **Third Cause of Action**.[97]

Several problems exist with Plaintiff's attempted showing of cause for a stay of Defendants' motion for summary judgment, and a reopening of discovery, under Fed. R. Civ. 56(f).  First, Plaintiff does not demonstrate that, during this action's ample discovery period,[98]

---

[97]      (Dkt. No. 72, Part 2, "Affirmation in Support," ¶¶ 2, 6, 7, 10, 12, 13 [Plf.'s Papers in Opposition to Defs.' Motion]; *see also* Dkt. No. 72, Part 2 at 20 [Plf.'s Mem. of Law, arguing that he did not receive during discovery the Attica C.F. medical records allegedly referenced by Defendants].)

[98]      (*See* Dkt. No. 35 [Order filed on 6/29/04 setting deadline for discovery as 12/30/04]; Dkt. No. 60 [Order filed on 3/10/05 in part granting Plf.'s motion to compel discovery].)

Defendants wrongfully denied him the information he now wants, or that he even requested that information from them.  For example, conspicuously missing from Plaintiff's affirmation are any exhibits attaching his prior interrogatories, document requests, and requests for admissions, or Defendants' responses to those requests.  Also missing is an indication that it is *Defendant Tousignant* (and not, say, the records custodian at Attica C.F.) who is in possession, custody or control of Plaintiff's medical records from Attica C.F.  Therefore, based on Plaintiff's affirmation, I cannot conclude that any failure by him to previously obtain the information now requested was not due to his own lack of diligence.

Second, I am suspicious of the relevance of some of the information that is the subject of Plaintiff's proposed requests.  For example, Plaintiff does not explain how a copy of his deposition transcript and medical records is relevant to his Third Cause of Action, other than to claim that Defendants cite such evidence in support of their argument for dismissal of Plaintiff's Third Cause of Action (specifically, in their Notice of Motion).[99]  Contrary to Plaintiff's claim, I find no evidence that Defendants base their argument for dismissal of Plaintiff's Third Cause of Action on any deposition transcript or medical records.[100]  Even if Defendant had made such an argument, I do not base my recommendation of dismissal of Plaintiff's Third Cause of Action on that argument.[101]

Similarly, while there would be some relevance to Plaintiff's medical records from Attica

---

[99]    (Dkt. No. 72, Part 2, "Affirmation in Support," ¶ 13 [Plf.'s Papers in Opposition to Defs.' Motion].)

[100]    (Dkt. No. 67, Part 5 at 17-21 [Defs. Mem. of Law]; Dkt. No. 67, Part 1 [Defs.' Notice of Motion].)

[101]    (*See*, *supra*, Part IV.C. of this Report-Recommendation.)

C.F., that relevance would be, in my opinion, minimal and far outweighed by the relevance of

Plaintiff's medical records from Upstate C.F., since it is Defendants' position that Plaintiff's

asthma condition had improved by the time he arrived at, or after he arrived at, Upstate C.F.

Thus, even if Plaintiff's medical records from Attica C.F. indicated that he had a "chronic"

condition (as Plaintiff asserts), I am very dubious that the records would create an issue of fact as

to whether Plaintiff was suffering from a *severe* medical condition when he was at Upstate C.F.

Third, it is unclear to me, based on Plaintiff's brief and vague assertions, whether the

issues concerning the discovery Plaintiff is now requesting were already raised by Plaintiff in his

numerous submissions regarding his two previous motions to compel discovery,[102] and resolved

by Judge Scullin in his Order of March 9, 2005.[103]

Based on each of these alternative grounds, I recommend that the Court deny Plaintiff's

request for a stay of consideration of Defendants' motion for summary judgment pending

completion of further discovery to enable Plaintiff to oppose Defendants' motion.

---

[102]      (Dkt. Nos. 44, 47, 48, 51, 54, 55, 57, 59.)

[103]      (Dkt. No. 60.)

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 67) be

**GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days

within which to file written objections to the foregoing report.  Such objections shall be filed

with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN**

**DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d

Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28

U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: July 13, 2006
       Syracuse, New York

George H. Lowe
United States Magistrate Judge